Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213

MICHAEL KRIEGER
MICHAEL S. KRIEGER, LLC NOEL & KRIEGER
165 SOUTH UNION BOULEVARD
ST. 555
LAKEWOOD CO 80228-2221

EXHIBIT

3

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5853

August 31, 2018

Michael Krieger
Michael S. Krieger, LLC Noel & Krieger
165 SOUTH UNION BOULEVARD
ST. 555
LAKEWOOD, CO 80228-2221

RE: Long Term Disability (LTD) Benefits
Wells Fargo & Company
Claim #: 7608815
Claimant: Michelle Nelson

Dear Attorney Krieger:

We reviewed your appeal request for Long Term Disability ("LTD") benefits and maintained the decision to deny benefits.

**Initial Claim Decision**

Ms. Nelson submitted a claim for her absence from work as of January 28, 2016, as a result of back, neck and generalized pain with chronic migraines. Ms. Nelson's TD benefits were due to begin on July 28, 2016 after the Policy's elimination period was completed. However, Ms. Nelson's claim was denied as the evaluation concluded she was not disabled throughout and beyond the Policy's elimination period.

The basis for the decision was outlined in a letter dated December 18, 2017. Ms. Nelson was provided an opportunity to request an appeal review of the denial, stating the reasons why she felt that her claim should not have been denied, and submit additional information to support the claim. Specifically, she was advised to submit the following information:

*all medical documentation to include but not limited to, all treatment notes, evaluations /consultation, diagnostic test results, physical therapy records, and any other medical evidence from 7/2016 through the present date as well as any additional information related to (your) occupation as a Consumer Loan Underwriter 3 which you feel will support (your) inability to perform your own occupation.*

**Appeal**

In your letter of appeal dated June 14, 2018, you indicated you are appealing the denial and have attached additional records and information in support of your request.

In support of Ms. Nelson's claim, you submitted the following information:

**Office visit notes of Katharine J Leppard, MD (Physical Medicine and Rehabilitation**):

**September 21, 2016**: returns to the office reporting persistent pain. She does not feel able to return to work even part-time. now having right shoulder and neck pain. Right shoulder impingement is negative. There is myofascial tightness. Physical exam is otherwise unchanged. Left neck and upper extremity pain, with a history of chronic neck pain and headaches dating back to a motor vehicle accident in 2007. This is normal…..she has received extensive treatment over the years. Has a spinal cord injury with a resulting spinal cord syrinx…this has remained stable for many years. Her 2016 left shoulder MRI shows minimal supraspinatus tendinitis. She failed to respond to a shoulder cortisone injection. Her 2016 cervical MRI does not show evidence of nerve root compression and is unchanged compared to her prior study. She has significant myofascial involvement on physical examination. She has plateaued with physical therapy and trigger point injections. Given her prior spinal cord injury from an attempted cervical facet injection she does not wish to pursue these at this pointAt this point she is at a plateau with treatment. FMLA paperwork completed. RTC in 6 months for medication recheck.

**November 16, 2016**: recheck. Reports pain unchanged…periodic botox injections but has not noted a significant change in her headaches. Physical exam unchanged… Left neck and upper extremity pain, with a history of chronic neck pain and headaches dating back to a motor vehicle accident in 2007. This is normal…..she has received extensive treatment over the years. Has a spinal cord injury with a resulting spinal cord syrinx…this has remained stable for many years. Her 2016 left shoulder MRI shows minimal supraspinatus tendinitis. She failed to respond to a shoulder cortisone injection. Her 2016 cervical MRI does not show evidence of nerve root compression and is unchanged compared to her prior study. She has significant myofascial involvement on physical examination. She has plateaued with physical therapy and trigger point injections. Given her prior spinal cord injury from an attempted cervical facet injection (2008) she does not wish to pursue these at this point…she is at a plateau with treatment. Neck pain: ibuprofen, Percocet. DDD Cspine, myofascial pain syndrome: ibuprofen, Percocet. Migraine: ibuprofen, Relpax, Percocet. Patient is on chronic pain medication. I do feel that these medications are indicated not only to control pain, but to maintain the patient's functional status….rtc 6 months. (This record was considered in the initial decision to deny the claim).

**May 25, 2017** returns to office for medication recheck…Exam: gait is normal, strength and sensation are normal. Physical exam is otherwise unchanged. Medications: ibuprofen, Percocet. Added Wellbutrin XL 300 mg, Montelukast Sodium 10 mg, certirizine HCL 10 mg. Injection Ketorolac Tromethamine 15 mg. Continue Botox for chronic headaches with Dr. Komatineni. Return in six months. (Considered in the initial decision to deny the claim).

**June 4, 2018**: Physical exam is unchanged. We reviewed the 10/27/17 lumbar MRI images. Impression: Left neck and upper extremity pain, with a history of chronic neck pain and headaches dating back to a motor vehicle accident in 2007This is normal…..she has received extensive treatment over the years. Has a spinal cord injury with a resulting spinal cord syrinx…this has remained stable for many years. Her 2016 left shoulder MRI shows minimal supraspinatus tendinitis. She failed to respond to a shoulder cortisone injection. Her 2016 cervical MRI does not show evidence of nerve root compression and is unchanged compared to

her prior study. She has significant myofascial involvement on physical examination. She has plateaued with physical therapy and trigger point injections. Give her prior spinal cord injury from an attempted cervical facet injection, she does not wish to pursue these at this point…she saw Dr. Hammers, he did not recommend surgery. At this point, she is at a plateau with her treatment. Medications: baclofen, Mobic, Percocet (no change in medications/dosages. Migraine/tension type headaches: Mobic, Relpax, Percocet (no change in medicaitons/dosages).

**Work Restrictions Questionnaire completed by Katharine Leppard, MD, June 4, 2018**. Dr. Leppard stated Ms. Nelsons paid is 8.5/10, constant and increases with activity. Headaches occur 5-6 times per week. Clinical findings of myofascial pain, degenerative cervical discs on MRI, spinal cord syrinx. Pain or other symptoms would "frequently" be severe enough to interfere with attention and concentration needed to perform simple work tasks. No limitations to walking, may sit at one time for 60 minutes without needing to walk, lay down or elevate legs. May stand for 60 minutes at one time without needing to walk, lay down or elevate legs. May sit and stand/walk each for 4 hours in an 8 hour work day. Walk every 60 minutes for 5 minutes. Breaks every hour for 5 minutes. May frequently lift up to ten pounds, no lifting 20 pounds or more. May occasionally twist, stoop/bend, crouch, squat, climb stairs. No limitations with reaching, handling or fingering. Likely to be absent more than 4 days/month as a result of impairment/treatment. Restrictions apply as of January 2016.

**Medical source statement of Mark Fraley, DO (primary care), June 11, 2018**. I have reviewed the work restrictions questionnaire completed by Katharine Leppard, MD on June 4, 2018. I saw Ms. Nelson on June 4, 2018 and I am in substantial agreement with the limitations and restrictions set forth in the questionnaire.

**Functional Abilities Evaluation, May 30, 2018**, Kristine Couch, OTR: Demonstrated the ability to sustain seated tolerance of 45 minutes before changing position secondary to her report of increased low back pain symptoms. She requested several changes of position from sitting to standing, secondary to her symptom report. She indicate she is limited in sitting to approximately 1.5 hour episodes secondary to her low back pain symptoms. Demonstrated a maximum prolonged standing tolerance of 12 minutes during testing before changing position secondary to report of increased low back pain symptoms. Reported she is limited in standing to approximately 1 hour episodes secondary to her pain symptoms. She was noted to sit, walk or stretch following the majority of standing tasks secondary to her report of increased symptoms. Was able to complete 1 of 10 laps (100 feet each) of the indoor walking test completed on commercial carpet over concrete. Ambulated with a slow gait. She determined she was unable to continue with this test secondary to her symptom report. She indicated her walking tolerance varies up to 30 minute episodes secondary to her low back pain. She also indicate she is limited in walking due to light sensitivity aggravating migraine headache symptoms. She was able to stand for a combined total of 47 minutes, representing 26.4% of the evaluation timed. She was able to sit for a combined total of 2 hours and 11 minutes, representing 73.6% of the evaluation time. Unable to perform floor to knuckle level lift. Knuckle to shoulder level occasional basis – 5 pounds. Bilateral upper extremity lift/carry occasional basis for 50 feet – 5 pounds. Bilateral upper extremity push 5 pounds, pull 6 pounds. Ms. Nelson reports the ability to lift a gallon of milk. Fine motor: Ms. Nelson requested taking her Relpax and Percocet) prior to these tests. She was noted to drop pieces, both hands, with the fine motor tests. Her performance placed her below the 10th percentile with the right, left, bilateral and assembly tests.

Ms. Nelson presents with numerous impairments which present concern for her ability to sustain purposeful activity as an Underwriter III for Wells Fargo due to migraine headache, significant light sensitivity, pain, cognitive concerns, decreased upper extremity function, decreased lifting/carrying tolerances, decreased cervical spine motions, limited workplace tolerance, decreased position tolerances, and decreased mobility. Ms. Nelson is no longer capable of maintaining and performing her job duties as an Underwriter III for Wells Fargo due to significant limitations outlined in this evaluation. She appears unable to reliably maintain employment in any capacity, on a full time or part time basis.

**Office visit notes of Aparna Komatineni, MD (Neurology**):

**November 23, 2016:** Headache started 10 years ago and have been gradually getting worse…get worse with physical activity as well as with hormonal changes. Intensity of headache is 8/10…associated attention and concentration problems as well as occasionally word slurring. Frequency of the migraines is at least 20/30 days/month…occasional episodes pain radiating from neck to left arm…does not have any numbness or tingling…duration is at least 4-6 mins….also reports that the neck apin and the radiation gets worse with physical activity and she is currently in physical therapy. Patient preferred the lesser number of injections since it is less invasive…Botox…200 units.

**May 4, 2017** - Headache started 10 years ago and have been gradually getting worse…get worse with physical activity as well as with hormonal changes. Intensity of headache is 8/10…associated attention and concentration problems as well as occasionally word slurring. Frequency of the migraines is at least 20/30 days/month…occasional episodes pain radiating from neck to left arm…does not have any numbness or tingling…duration is at least 4-6 mins….slight deviation from routine protocol of giving 31 injection sites. Patient preferred the lesser number of injections since it is less invasive…dose 200 units…

**December 27, 2017** office note, A. Komatineni, MD: Botox appointment. Last seen by PA Harmon in December of last year. She was referred for Botox injections and has seen greater than 50% improvement in headache intensity but is still having headaches frequently…also has neck pain treated by Dr. Leppard…start Depacon 100 mg/ml IV 250 mg 1—mg/ml IV every 1 to 2 weeks no more than 2 times/month for 1 month. Start Keterolac Sodium 30 mg/1mg, 30 mg IV every 1 to 2 weeks prn no more than 2 times/month for 1 month. Start diphenhydramine Solution 50 mg/ml, 25 mg, IV every 1-2 weeks prn no more than 2 times/month for 1 month. Botox injection.

**Office visit notes of T. Sandell, MD (Physical Medicine and Rehabilitation):**

**February 27, 2018 –** seen to address chronic pain management issue and chronic daily headaches present since 2007. Using an average of one to two oxycodone per day. Does not report any new issues today. The oxycodone is controlling her headaches. I did write another script that will be filled in approximately a month. Follow up in three months. Also seeing Dr. Komatenini with regards to Botox treatment.

Jaime L. Case, MS, PA-C/ T. Sandell MD: office visit note **November 29, 2017 –** evaluated for chronic pain related to motor vehicle accident in 2007. Primarily has included chronic daily headaches with intermittent migraines. Last visit was given samples of Gralise…without much

benefit or side effect…was simply discontinued. Pain is 6/10. Prior treatment which did include physical therapy, chiropractic care, dry-needling, occipital nerve blocks and attempt at a cervical epidural injection and cervical facet injections and nothing has seemed to help…has typically had side effects with neuromodulary medications and muscle relaxers. At this point, we are just going to keep her on oxycodone. Impression: chronic daily headache – 2007. Migraine with suspicion of occipital neuritis intermittently.

**November 9, 2017** (J. Case, MS PA-C); Exam: diffuse tenderness with palpation in the cervical and parscapular muscles…increased tone in the right greater than left lateral cervical muscles with multiple myofascial taut bands appreciated, although active trigger points were not noted. Has full but guarded range of motion for her cervical spine and upper extremities. Positive for tenderness along the occipital ridge with palpation of greater and lesser occipital nerves and negative for cervical axial loading and cervical facet loading. Adon's, Allen's. Try to obtain imaging of the head and neck.

**January 12, 2018 PT discharge note**. Reports little overall change with physical therapy. D/C to HEP due to limited/no progress in PT with active exercise and soft tissue work. December 5, 2017 PT evaluation. Presents to therapy with c/o mechanical LBP that is new in nature but with normal MRI. Quite deconditioned and has generally poor LE strength and poor core strength/postural endurance.

**Turner Chiropractic daily/office notes**: **November 10, 2017 - May 2, 2018**

## Appeal Evaluation

During the initial claim evaluation, records in the claim file prior to the denial noted the following:

**Dr. Komantineni office visit notes for June 28, 2016 through October 11, 2017, which state in part as follows:**

**June 28, 2016**: Ms. Nelson was seen for Botox injection on May 27, 2016 with at least 50 % reduction in headache intensity. She reported she still continued to get headaches but they weren't as intense. An MRI of the c-spine showed stable anterior paramidline cord syrinx at L1, and degenerated disc disease. She noted continued left arm pain radiating to left shoulder and neck. Exam V/V bilaterally, sensory normal bilateral LE. Assessment; some improvement with botox injections. Ordered referral to Dr. Hammer for eval and management of syrinx of spinal cord.

**February 23, 2017**: She was referred for Botox injections and has seen greater than 50% improvement in headache intensity but is still having headaches frequently. She also has neck pain and is treated by Dr. Leppard in pain management. Her disability paperwork was completed, signed and handed to the patient. Start Acetaminophen/Butalbital/Caffeine capsule 300 mg-50mg-40mg, 1 cap. Botox injection 200 units.

**September 8, 2016 Headache Residual Functional Capacity Questionnaire, L. Hughes/A Komatineni, MD:** 25 headache days per month duration 4 hours to 3 days. Frequent

unscheduled breaks during an 8 hour workday. Only low stress jobs. Unable to lift more than 10 pounds, avoid temperature extremes, humidity, noise, dust, fumes, gases or hazards.

**July 25, 2016 Ronald Hammers, MD**: from neurosurgical perspective regarding headaches….I will defer to neurology and pain management. As for her more recent history of left upper extremity pain, the exact etiology is uncertain. There is some cervical spondylosis but this is not severe and I could not elict any specific dermatome in today's exam…conservative management is a very good option for patient who remains neurologically intact, as she does…apparently had a recent EMG/NCV and I would like her to provide those results.

**Records of Dr. Leppard were on file for August 17, 2016 through October 26, 2017** (some records as outlined above):

**August 17, 2016**: Ongoing neck pain with associated cervicogenic headaches. Headaches occur 5-6x per week and pain can reach as high as 8/10. A brain MRI from 2015 shows greater than expected volume loss for age. Left shoulder MRI from 2016 was positive for left supraspinatus tendinitis. Noted to have ongoing pain since her motor vehicle crash in 2007 and developed a spinal syrinx following an injection post-MVC. She has seen specialists who do not recommend surgery.

**September 21, 2016**: Now now having right shoulder, as well as ongoing neck pain. She has myofascial tightness on exam with no evidence of impingement. Medications on this date included Ibuprofen and Percocet.

**October 26, 2017**: Returns to office with insurance paperwork to complete. Is having low back pain…began one month ago…a midline low back pain…no radiating pain numbness or weakness. An MRI has been ordered. Physical exam is unchanged. Neck pain: Left neck and upper extremity pain, with a history of chronic neck pain and headaches dating back to a motor vehicle accident in 2007This is normal…..she has received extensive treatment over the years. Has a spinal cord injury with a resulting spinal cord syrinx…this has remained stable for many years. Her 2016 left shoulder MRI shows minimal supraspinatus tendinitis. She failed to respond to a shoulder cortisone injection. Her 2016 cervical MRI does not show evidence of nerve root compression and is unchanged compared to her prior study. She has significant myofascial involvement on physical examination. She has plateaued with physical therapy and trigger point injections. Give her prior spinal cord injury from an attempted cervical facet injection, she does not wish to pursue these at this point…she saw Dr. Hammers, he did not recommend surgery. At this point, she is at a plateau with her treatment. Medication list: Baclofen, Mobic, Percocet. Myalgia. Medications: Baclofen, Mobic, Percocet. Degenerative disc disease c-spine. Tension type headache, unspecified. Migraine headache. Updated medication list: Mobic, Relpax, Percocet. I will no longer being prescribing pain medications effective 12/31/17…return as needed.

**Office visit notes, Mark Fraley, DO (primary care):**

**June 26, 2016**: discuss phentermine and antidepressants. Depression flaring up somewhat lately…not staying active but does walk some…never had any suicidal thoughts…increase Wellburtin to 300 mg/day. Encourage to get more active and walk…refilled Zanaflex, gave exercises for neck and shoulders.

**August 24, 2016**: complaint of increased fatigue X 3 weeks would like labs. Musc: No tender swollen joints. No acute findings. Psych: Oriented to person, place, and time. Speech is fluent and words are clear. Questions are answered quickly and appropriately. Diagnosis: other fatigue. Lengthy discussion about depression. Denies suicidal thoughts. Discussed medication. Recommended to see a counselor. Discussed healthy lifestyle, diet, exercise. Headaches: Keep diary of prior food intake, when happening, other meds, treatments tried, etc.

**October 26, 2016**: pt states she went to Mexico last week- c/o intermittent upset stomach, diarrhea X 9 days…recently visited Mexico on October 19…she continues w/epigastric discomnfort….Diagnosis: other gastritis without bleeding. GI cocktail given.

**November 30, 2016 –**visit for sinus pain X 5 days.

**December 28, 2016 –** nasal pain and cough and scratchy throat x 6 days.

**February 6, 2017 –** complaints of headache x 5 days…has taken Tylenol and Relpax without relief. Toradol 60 mg IM given.

**June 21, 2017** doing better with Viibryd, slowly going up on dose and depression is improved. Migraines unchanged, Relpax always works. Diagnosis primary insomnia, major depressive disorder recurrent moderate, migraine uspec not intractable. Increase Viibryd 40 mg daily. Continue stretching exercises for neck.

Turner Chiropractic records were also considered in the initial claim decision, for visits from **June 2, 2016 through July 6, 2017.**

In an activities questionnaire Ms. Nelson completed on November 1, 2017, she stated she is able to sit for 0-90 minutes, stand 0-2 hours, and walk 0-2 hours, depending on pain levels. Daily activities includ doctor's appointments, chiropractor appointments, and massage therapy appointments. She may pick up her daughter from school depending on pain.

To determine Ms. Nelson's supported restrictions/limitations for January 28, 2016 through July 27, 2016, prior to the claim decision, her claim was reviewed by Farjallah Khoury, MD, an independent physician who is board certified in Physical Medicine and Rehabilitation and Pain Medicine. Dr. Khoury attempted to reach Dr. Fraley, Dr. Leppard, and Dr. Komatineni on multiple occasions, but did not receive return calls. Based on his review of the medical records, Dr. Khoury concluded:

*Due to this claimant's cervicalgia and cervicogenic headache complaints: Reasonably supported restrictions and limitations include pushing, pulling, lifting, and carrying of 25 pounds occasionally, 15 pounds frequently, and occasional bending/twisting of the neck due to ongoing symptoms of pain with migraines in the setting of cervical spondylosis (noted on imaging). The claimant should avoid climbing ladders due to her condition that results in painful and restricted cervical spine ROM. No other postural activity, and no sitting, standing, or walking R/Ls are supported as gait, balance, and LE strength are consistently normal. The claimant can reach at desk level, below-waist level, and overhead on a frequent basis. There are no handling/fingering/feeling restrictions. No R/Ls for typing, keyboarding, mouse use,*

*phone work, etc. Within these restrictions the claimant can work full time in a sustained capacity. Prognosis is good for full-time work within the documented R/Ls, but due to the chronicity of pain symptoms, R/Ls are likely permanent.*

Dr. Khoury concluded Ms. Nelson was capable of full time sustained work capacity within the above restrictions/limitations, due to the lack of consistently demonstrated weakness, sensory loss, and abnormal gait.

During the review of your appeal, Ms. Nelson's claim file was reviewed by Seth Stoller, an independent physician who is board certified in Neurology with Added Expertise in Headache and Pain Medicine. Dr. Stoller contacted Dr. Komantineni in an effort to ensure thorough understanding of Ms. Nelson's condition and supported restrictions/limitations for January 28, 2016 through July 27, 2016. Dr. Komantineni spoke with Dr. Stoller and stated she is not completing disability paperwork as she does not believe Ms. Nelson is unable to work in any capacity; she has no focal deficits on exam, she believes Ms. Nelson can walk without difficulty, and can handle light duty without difficulty. The two physicians discussed Dr. Stoller's recommendation regarding restrictions and limitations and Dr. Komantineni was in agreement. Based on his review of the medical records, Dr. Stoller concluded Ms. Nelson may lift up to 25 pounds occasionally, and 20 pounds frequently. She may push pull 30 pounds frequently, and 50 pounds occasionally. She may bend/twist and reach above shoulder occasionally. She may reach below shoulder, grasp, type, handle, finger, and feel frequently. There are no restrictions on sitting, standing, or walking. She can work in a full time sustained capacity. From a neurological perspective, the headache and cervical spine issues would not preclude any sustained occupational functioning on a full-time basis.

Ms. Nelson's claim file was also reviewed by Behzad Emad, MD an independent physician who is board certified in Physical Medicine and Rehabilitation with a sub specialty certificate in Pain Medicine. Dr. Emad contacted Dr. Leppard's office to discuss Ms. Nelson's condition and supported restrictions/limitations. Dr. Leppard required questions to be sent in writing for her response. On August 10, 2018, Dr. Leppard responded as follows: the claimant had no neurologic deficits during her recent evaluation. Last cervical spine MRI of 01/29/2016 revealed degenerative disc disease and cord syrinx. Bilateral upper extremity EMG (electromyogram) of 07/20/2016 was normal. The claimant has long plateaued with therapy. She completed therapy years ago with no response. She had a cervical facet injection in 2008 which resulted in spinal cord injury. No ongoing treatment is noted. No medications side effect is reported. Prognosis is poor due to chronic pain. She is on chronic pain medications from Dr. Timothy Sandell. No further treatment is recommended from Dr. Leppard's office.

Following review of the medical records and Dr. Leppard's response, Dr. Emad concluded, with regard to the cervical and lumbar spine and left shoulder:

*Due to the claimant's intractable pain, continued physical functional deficits, and abnormal diagnostic test findings, the following restrictions/limitations are supported from 01/28/2016 through 07/27/2016, and from 07/28/2016 forward:*

- *The claimant is restricted to sitting up to 30 minutes at a time and up to a total of six hours in an eight hour day.*
- *The claimant is restricted to standing up to 30 minutes at a time and up to a total of one*

*hour in an eight hour day.*

- *The claimant is restricted to walking up to 30 minutes at a time and up to a total of one hour in an eight hour day.*
- *The claimant is restricted to carrying, lifting, pushing and pulling no greater than 10 pounds of weight occasionally, and 5 pounds frequently.*
- *The claimant is restricted to occasional reaching overhead, above the shoulders, and below the waist level, and frequent reaching at waist/desk level.*

- *There are no restrictions for handling, fingering, grasping, pinching, gripping and use of hand controls.*
- *The claimant is restricted to occasional twisting, crouching, bending/stooping, kneeling, squatting, stair climbing, and use of foot control.*
- *The claimant is restricted from crawling, working at unprotected heights, driving commercial vehicle, climbing ladders, and operating heavy equipment or safety sensitive machinery.*

*The claimant has a history of intractable headaches since a MVA in 2007. She also has chronic neck pain radiating to the left lower extremity, and a facet injection was attemptein 2008 which lead to development of a spinal cord syrinx. On 05/25/2017, she also started complaining of low back pain. Conservative and interventional treatments only provided temporary relief. She continued to have frequent to constant headache, intermittent to frequent neck pain, frequent to constant neck stiffness, and intermittent to frequent low back and sacral pain and stiffness. She had spinal fixation/malposition/palpatory findings at C1, C2, C7, T12, L5 and sacrum; hypertonicity in the bilateral scalene, upper trapezius, multifidus, thoracic-erector, suboccipitals, and splenius-cervicis; and tenderness over the bilateral cervical spine, shoulder, thoracic spine, lower back, and right L5 region.*

Dr. Stoller and Dr. Emad reviewed the claim file and conferred with one another in rendering the noted restrictions/limitations in an effort to ensure any/all overlapping restrictions/limitations between specialties were considered.

Ms. Nelson's claim was previously reviewed by a vocational consultant, who completed an occupational analysis in order to identify the material and substantial duties of Ms. Nelson's occupation as it is normally performed in the local economy. The analysis showed Ms. Nelson's occupation is most closely captured by the titles of Loan Underwriter and Loan Officer. The occupation is most often performed at a sedentary and light demand level based on Department of Labor guidelines found in the Dictionary of Occupational Titles.

The Department of Labor defines sedentary work as,

"**S-Sedentary Work** – Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met."

Additional physical demands/positional requirements include:

• **Frequent to constant** sitting
• **Frequent** handling and fingering
• **Occasional** standing, walking, and reaching (reaching can be reduced by moving objects within 18 inches of the body)
• **No** kneeling, bending/stooping, twisting, crouching/squatting, balancing, climbing and crawling

The vocational consultant also noted:

Ms. Nelson lives in Colorado Springs, CO within the Colorado Springs, CO Metropolitan Statistical Area (MSA). I have reviewed the Bureau of Labor Statistics May 2016 Occupational Statistics report as well as the employer locator on America's Career Info Net internet site and Internet Job Posting sites within Ms. Nelson's MSA. Only full-time positions were identified. A review of the listings found that the duties, responsibilities and qualifications are reflective of those reported by the DOT, O*NET, and OOH. Considering this information, it is reasonable to conclude that, in her local economy, Ms. Nelson's occupation of Loan Underwriter is most often performed in the same manner as found in the national economy.

Liberty Life Assurance Company of Boston (Liberty Life) acknowledges that the Social Security Administration (SSA) found Ms. Nelson to be disabled and awarded her Social Security Disability (SSD) benefits effective July 2016. Liberty Life requested and received updated medical records from Dr. Leppard, Dr. Komantineni, Dr. Turner, Dr. Fraley, and Dr. Sandell, and then conducted three peer reviews with an independent physicians. Two physicians were Board Certified in Physical Medicine and Rehabilitation with credentials in Pain Medicine, and one physician was Board Certified in Neurology with added expertise in Headache and Pain Medicine. We also conducted a vocational assessment regarding the physical demands of Ms. Nelson's occupation in the local economy. Based on the additional reviews conducted after the approval of Ms. Nelson's SSD award we determined that she was no longer disabled per the terms and provisions of the Wells Fargo & Company's Long Term Disability Policy.

**<u>Conclusion</u>**

We conducted a thorough and independent review of Ms. Nelson's entire claim. In summary, we acknowledge that she may have continued to experience some impairments and symptoms associated with your condition. However, the information does not contain exam findings, diagnostic test results or other forms of medical documentation supporting her impairments and symptoms remained of such severity, frequency and duration that they resulted in restrictions or limitations rendering her unable to perform the duties of her occupation throughout and beyond the Policy's elimination period.

Having carefully considered all of the information submitted in support of Ms. Nelson's claim, our position remains that proof of her disability in accordance with the Policy provisions has not been provided. Therefore, no benefits are payable.

This claim decision reflects an evaluation of the claim facts and Policy provisions.

**Policy Provisions**

In order to receive benefits, you must satisfy the requirements of all Policy provisions that state, in part:

***"Disability" or "Disabled"*** *means:*
*i. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*

*ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*

***"Material and Substantial Duties"*** *means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.*

***"Own Occupation"*** *means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is normally performed in the local economy.*

***"Elimination Period"*** *means a period of consecutive days of Disability or Partial Disability for which no b0enefit is payable. The Elimination Period is shown in the Schedule of Benefits and begins on the first day of Disability.*

*If the Covered Person returns to work for any thirty or fewer days during the Elimination Period and cannot continue, Liberty will count only those days the Covered Person is Disabled or Partially Disabled to satisfy the Elimination Period.*

***Elimination Period:***

*26 weeks*

***"Proof"*** *means the evidence in support of a claim for benefits and includes, but is not limited to, the following:*

*1. a claim form completed and signed (or otherwise formally submitted) by the Covered Person claiming benefits;*

*2. an attending Physician's statement completed and signed (or otherwise formally submitted) by*
*the Covered Person's attending Physician; and*

*3. the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits.*

*Proof must be submitted in a form or format satisfactory to Liberty.*

***Disability Benefit***
*When Liberty receives Proof that a Covered Person is Disabled due to Injury or Sickness and requires the Regular Attendance of a Physician, Liberty will pay the Covered Person a Monthly Benefit after the end of the Elimination Period, subject to any other provisions of this policy. The benefit will be paid for the period of Disability if the Covered Person gives to Liberty Proof of continued:*

*1. Disability;*
*2. Regular Attendance of a Physician; and*
*3. Appropriate Available Treatment.*

*The Proof must be given upon Liberty's request and at the Covered Person's expense. In determining whether the Covered Person is Disabled, Liberty will not consider employment factors including, but not limited to, interpersonal conflict in the workplace, recession, job obsolescence, paycuts, job sharing and loss of a professional or occupational license or certification.*

*For purposes of determining Disability, the Injury must occur and Disability must begin while the Employee is insured for this coverage.*

Under the Employee Retirement Income Security Act (ERISA) appeal guidelines, Ms. Nelson was entitled to appeal the decision made by Liberty Life Assurance Company of Boston (Liberty), and to submit any additional information you wished to be considered as part of the appeal. Liberty has conducted a full and fair review of your appeal and accompanying materials, and has concluded that the denial of benefits will be maintained.

At this time, Ms. Nelson's administrative right to review has been exhausted; no further review will be conducted by Liberty and her claim will remain closed. She may request to receive, free of charge, copies of all documents relevant to her claim. She has the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

The Wells Fargo & Company Group Disability Income Policy contains the below provision:

**Legal Proceedings**
A claimant or the claimant's authorized representative cannot start any legal action:
1. until 60 days after proof of claim has been given; nor
2. more than three years after the time proof of claim is required.

For purposes of this claim, the time proof of claim is required is based on the date of the denial letter, December 18, 2017. The contractual statute of limitations period under the Legal Proceedings provision would begin on December 18, 2017 and will expire on December 17, 2017.

This information is provided for purposes of this claim only, as the time proof of claim is required may differ based on claim specifics and applicable policy language.

Nothing in this letter should be construed as a waiver of any Liberty Life Assurance Company of

Boston rights and defenses under the above captioned Policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Decisions made by Liberty Life Assurance Company of Boston are based on the provisions outlined in Wells Fargo & Company's Policy. These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities. No internal rules, guidelines, protocols, standard or other similar criteria were relied upon in rendering the claim determination.

If you require language translation assistance, please contact Liberty Life to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata' hane'go shíká a'doowoł nínízingo saad hosíníłįį' dóó ná'ookąąh nííní'ąągo naaltsoos nííníłtsoozígíí hazho'ó bik'idi'deeshtįįł nínízingo doo bąąh ílínígóó níká a'doowoł éí biniiyé shił hodíílnih áko ákwe'égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If you have any questions regarding this matter, please contact me.

Sincerely,

Heather Carignan
Appeal Review Consultant
Phone No.: (888) 437-7611 Ext. 16292
Secure Fax No.: (603) 334-5853