**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No: 1:19 - CV – 01340 - KMT**

MICHELLE R. NELSON,

Plaintiff,

v.

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON,

Defendant.

---

## MOTION FOR LEAVE TO SERVE WRITTEN DISCOVERY

---

**COMES NOW** the Plaintiff, Michelle R. Nelson, by and through her attorneys, Michael S. Krieger, LLC, with her Motion for Leave to Serve Written Discovery, made pursuant to Rules 26(b) and Rule 33 and 34, F.R.Civ.P.

1. Plaintiff's counsel certifies that he has discussed this matter, sending the specific discovery requests to Defendant on August 13, 2019. The Defendant is not yet able to state a position on this Motion but, at this time, opposes this Motion for Leave to Serve Written Discovery.

2. Plaintiff contends that ***Metropolitan Life Insurance v. Glenn,*** 128 S. Ct. 2343 (U.S. 2008) has opened up ERISA cases to discovery into the nature and extent of the conflict between an entity who both pays benefits and determines eligibility for benefits.

3. ***Glenn*** rejected special procedural or evidentiary rules, thus abrogating the limitations on discovery unique to ERISA cases that were imposed by lower courts. Moreover, ***Glenn*** provided significant guidance in its comments concerning the manner in which conflicts of interest are to be considered, writing:

> "in such instances, any one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tie-breaking factors inherent or case-specific importance. The conflict of interest at issue here, for example, should prove more [*11} important (perhaps of great importance) or circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. [Citation omitted]. It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off the claims administrators from those interested in firm finances, or by imposing management checks that penalize an accurate decision-making irrespective of whom the inaccuracy benefits." ***Glenn***, 128 S. Ct. at 2351.

4. Thus, as one Court has noted about ***Glenn***: "the Court (in ***Glenn***) made clear that not all conflicts are created equal. Their significance in any given case depends upon all of the circumstances, including those suggesting a higher or lower likelihood that the conflict affected the decision. Information bearing on the manner in which a conflicted plan administrator compensates outside consultants could be highly pertinent. Maintenance of compensation arrangements that create economic incentives for consultants to recommend denial or termination of benefits would have a material bearing on the likelihood that the administrator's conflict affects its benefit determinations." ***Hogan-Cross v. Metropolitan Life Insurance Company***, 2008 U.S. Dist. LEXIS 58027. (This is attached as Exhibit 4 for the Court's convenience).

5. The proposed written discovery in this case is focused upon (1) the medical

and vocational experts who contributed opinions to the Plan Administrator; (2) the nature and extent of any auditing or evaluation of the peer reviewers chosen by allegedly independent medical evaluation agencies.

6. The abovementioned areas of discovery are directly derived from *Glenn.* These are of grave concern because of past abuses which have occurred from conflicted Plan Administrators, some of which are discussed below. These include:

A. The fact that reviewing doctors have sometimes developed opinions denying disability benefits after extraordinarily cursory reviews of medical records. For example, a Doctor Leonard Sonne, M.D., reports that the most medical reviews he did in a single month was 400 (See, Exhibit 1, Affidavit of Dr. Leonard Sonne, paragraph 8). Given a 160 hour working month, this means that Dr. Sonne would have reviewed each file and written a report in an average of 24 minutes each.

B. Liberty Mutual extensively uses medical review organizations to conduct medical reviews. For example, Liberty procured over 1600 medical reviews from Medical consultants Network in 2013 and 2014, resulting in payments to Medical Consultants Network in excess 2.6 Million dollars for those two years. In addition, Liberty procured over 3500 reviews from MLS Peer Review Services in 2013 and over 3200 such reviews in 2014, for a total of over 3.6 Million dollars for those two years (See, Answers to Interrogatories of Liberty, attached as Exhibit 2).

C. Many reviewing doctors are selected by national medical review entities whose anti-claimant bias is evident from their advertising materials (See Exhibit 3).

D. There is evidence that the reviewing service utilized in the Nelson case, MES, “compiles medical records in an orderly fashion”, and issues “draft report” for its

medical reviewers (from the MES 2010 website). More alarmingly, there is a piece of evidence that MES “cleans up” a report for sending to the insurance carrier (See Exhibit 4), raising the possibility of biased or slanted medical reviews.

**WHEREFORE,** Plaintiff requests that the Court allow discovery consistent with this Motion in the form of the attached set of Plaintiff’s Discovery Requests to Defendant (Exhibit 5).


*s/Michael S. Krieger*
Michael S. Krieger
Michael S. Krieger, LLC
Noel & Krieger
165 South Union Blvd, Suite 555
Lakewood, CO 80228
303 781-5559 Fax: 303-781-1349
Email: Mike@Krieger.Law
Attorney for Plaintiff


**Certificate of Electronic Delivery**

I hereby certify that on 3 Sept 2019, the above document was served thru the US District Court ECF system to the following person:

Iwana Rademaekers

*s/ Michael S. Krieger*